## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

    vs.                                Cr. No. 13-571 MCA

IRA STOCKTON *et al.*,

      Defendants.

### MAGISTRATE JUDGE'S PROPOSED FINDINGS
### AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Defendants' Joint Motion to Compel Discovery (Doc. 280), filed January 16, 2015. By Order of Reference filed February 10, 2015 (Doc. 302), this matter was referred to the undersigned to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate disposition of the motion. The Court, having reviewed the parties' submissions and the relevant law, having heard the arguments of counsel at hearings on March 9, 2015 and April 29, 2015, and being otherwise fully advised, concludes that the motion is well taken in part, and recommends that it be GRANTED IN PART and DENIED IN PART as follows.

### *Introduction*

Defendants Ira Stockton, Nathan Coccimiglio, Adam Stockton, James Robertson, Scott Crawford, and Derrick Black are charged with conspiring to distribute, and distributing, controlled substance analogues from March 2011 to May 2012 in violation of the Analogue Act, 21 U.S.C. §§ 802(32) and 813. (Doc. 135.) The substances that Defendants are charged with conspiring to distribute, and distributing, are AM-2201, AM-694, JWH-250, UR-144, and 5-

Fluoro-UR-144.[1]  (*Id.*)  The government alleges that each of these substances was at all relevant times an analogue of the Schedule I controlled substance JWH-018.  (Doc. 295 at 1.)  Defendant Ira Stockton is also charged with committing various financial crimes from March 2011 to April 2013 in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957, and 21 U.S.C. § 856(a).  (Doc. 135.)

From April 2013 through at least March 2015, the government has disclosed CDs containing thousands of pages of documents and photographs, as well as video and audio recordings.  (Doc. 280 at 3-4; Doc. 346 at 2.)  Defendants nevertheless identified alleged deficiencies in the government's disclosures, and therefore filed a Joint Motion to Compel Discovery on January 16, 2015.  (*See generally* Doc. 280.)  The government responded in opposition to the motion on February 6, 2015 (Doc. 295), and Defendants filed a reply on February 20, 2015.  (Doc. 321.)  On March 9, 2015, the Court held a hearing on the motion. (Doc. 327.)  Pursuant to the Court's instructions at the hearing, which were documented in an order filed March 10, 2015 (Doc. 331), Defendants filed a Joint Status Report Concerning Discovery on April 8, 2015, in which they described the remaining discovery disputes between the parties.  (Doc. 346.)  The Court held a second hearing on these disputes on April 29, 2015. (Doc. 359.)  Also on that date, Defendants filed a Notice of Supplemental Materials.  (Doc. 361.)

In their Joint Status Report Concerning Discovery and at the April 29, 2015 hearing, Defendants identified the following categories of documents that Defendants are requesting but that the government has still not produced:  (1) materials concerning the government's characterization of Research Triangle Park Laboratories ("RTPL") as a "sham lab" and of certain

---

[1] After the events charged in the Superseding Indictment, all of these substances were listed as Schedule I controlled substances.  *See* 21 U.S.C. § 812, Sch. I(d)(2) (listing AM-2201, AM-694, and JWH-250); 21 C.F.R. § 1308.11(h)(1), (2) (listing UR-144 and 5-Fluoro-UR-144).

RTPL reports as "fraudulent"; (2) data underlying two unpublished pharmacological studies conducted at the behest of the United States Drug Enforcement Agency ("DEA") regarding the charged substances, on which studies a government expert witness intends to rely; (3) DEA protocols for making analogue determinations; (4) materials concerning internal DEA discussions regarding analogues; and, (5) lists of substances the DEA has determined to be analogues and non-analogues. (Doc. 346.)

### *Legal Standards*

Federal Rule of Criminal Procedure 16 "sets forth basic disclosure obligations with which the government must comply in every case." *United States v. Lujan*, 530 F. Supp. 2d 1224, 1264 (D.N.M. 2008). "The requirements of *Brady*,[2] *Giglio*,[3] and the Jencks Act[4] supplement the Rule 16 requirements, creating a framework for essentially full disclosure" in federal criminal cases. *Id.* at 1264. In relevant part, Rule 16 provides that

> [u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i)  the item is material to preparing the defense;
>
> (ii) the government intends to use the item in its case-in-chief at trial; or
>
> (iii) the item was obtained from or belongs to the defendant.

---

[2] *Brady v. Maryland* requires the government to disclose evidence favorable to an accused where the evidence is material to guilt or punishment. 373 U.S. 83, 87 (1963).

[3] *Giglio v. United States* extended the government's disclosure obligation under *Brady* to include evidence that is useful to impeach government witnesses. 405 U.S. 150, 153 (1972).

[4] The Jencks Act requires the government to disclose the statements of a government witness after the witness has testified on direct examination at trial. 18 U.S.C. § 3500.

Fed. R. Crim. P. 16(a)(1)(E).[5]  Rule 16 also requires the government to disclose, upon a defendant's request,

> the results or reports . . . of any scientific test or experiment if:  (i) the item is within the government's possession, custody, or control; (ii) the attorney for the government knows – or through due diligence could know – that the item exists; and (iii) the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial.

Fed. R. Crim. P. 16(a)(1)(F).  Rule 16 further requires the government to provide a defendant, upon request, with

> a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. . . .  The summary . . . must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(a)(1)(G).

Rule 16 "is intended to prescribe the minimum amount of discovery to which the parties are entitled.  It is not intended to limit the judge's discretion to order broader discovery in appropriate cases." *United States v. Armstrong*, 517 U.S. 456, 475 (1996) (Breyer, J., concurring in part and concurring in the judgment) (quoting Fed. R. Crim. P. 16, Advisory Committee Notes, 1974 amend.); *United States v. Siegfried*, 2000 WL 988164 at *1 n.1 (N.D. Ill. 2000) (same).  "Rule 16 . . . is broader than *Brady*." *United States v. Baker*, 453 F.3d 419, 424 (7th Cir. 2006).  Nevertheless, discovery under Rule 16 is not boundless.  "A defendant must make a prima facie showing of materiality before he is entitled to obtain requested discovery" under Rule 16(a)(1)(E) or (F).  *Lujan*, 530 F. Supp. 2d at 1234.

> To show materiality under this rule the defendant must demonstrate that the requested evidence bears some abstract logical relationship to the issues in the case [and t]here must be some indication that the pretrial disclosure of the

---

[5] The alphanumeric designations of Rule 16's subsections have varied over the years, as evidenced in the caselaw interpreting the rule.  For clarity, the Court will refer to the relevant subsections by their current designations throughout these Proposed Findings and Recommended Disposition.

> disputed evidence would enable the defendant significantly to alter the quantum
> of proof in his favor.

*United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993); *United States v. Slough*, 22 F. Supp.

3d 1, 3-4 (D.D.C. 2014); *Lujan*, 530 F. Supp. 2d at 1234. "[E]vidence is material under Rule 16

as long as there is a strong indication that it will play an important role in uncovering admissible

evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or

rebuttal." *Lloyd*, 992 F.2d at 351.

Finally, when evaluating whether evidence is "material to preparing the defense" under

Rule 16, the Court must remain mindful of the broader principles the Supreme Court has

established regarding the materiality of evidence in federal criminal cases, principles which

reflect an

> overriding concern with the justice of the finding of guilt. This means that the
> omission [of material evidence] must be evaluated in the context of the entire
> record. If there is no reasonable doubt about guilt whether or not the additional
> evidence is considered, there is no justification for a new trial. On the other hand,
> if the verdict is already of questionable validity, additional evidence of relatively
> minor importance might be sufficient to create a reasonable doubt.

*United States v. Valenzuela-Bernal*, 458 U.S. 858, 868 (1982). The Court will consider each

category of evidence Defendants seek from the government in light of these standards and

principles.

## *Analysis*

### 1.    Items Concerning the Government's Characterization of RTPL as a "Sham Lab"

The Court will first consider Defendants' motion to compel the government to disclose

items supporting its contentions that RTPL was a "sham lab" from which Defendants obtained

fraudulent reports. (Doc. 346 at 13.) This request originates in correspondence between Amy

Sirignano for the defense and Jack Burkhead for the prosecution. (Docs. 280-1, 280-2.) In a

letter dated March 13, 2014, Ms. Sirignano requested a number of items regarding six listed laboratories, including RTPL.  (Doc. 280-1 at 1-5.)  By letter dated April 28, 2014, Mr. Burkhead responded that

> the United States did no[t] use [RTPL] to conduct any chemical testing.  Rather, it was a sham lab used by your collective clients in a clumsy attempt to legitimize their business by purchasing fraudulent documents that purported to show the Spice they distributed did not contain controlled substances or analogues. Needless to say, I will not be providing to you any documents in connection with this "lab."

(Doc. 280-2 at 5.)

Defendants have indicated that they are seeking five subcategories of items regarding the contentions in Mr. Burkhead's letter, specifically, items in the government's possession, custody, or control which address:  (a) whether RTPL is a "sham lab"; (b) whether the RTPL reports at issue were "purchased"; (c) whether the RTPL reports at issue were "fraudulent"; (d) whether "these documents purport to show the 'Spice' distributed did not contain controlled substances or analogues"; and, (e) whether Defendants used the RTPL reports "in an attempt to legitimize their business."  (Doc. 280 at 21; Doc. 346 at 13-14.)  Defendants argue that the government must disclose all such items because they are "necessary for the preparation of the defense" within the meaning of Rule 16(a)(1)(E)(i).  (Doc. 280 at 21; Tr. at 8-30.[6])

The government premises its refusal to disclose these items on several points.  First, it asserts that it has no such evidence that may be exculpatory, *e.g.*, evidence that any person requested a report from RTPL in good faith and that RTPL deceived that person by providing a fraudulent report.  (Tr. at 21.)  Next, the government avers that it has no documentation of any statements Defendants made in connection with RTPL or its reports, which might be discoverable under Rule 16(a)(1)(A) or (B).  (*Id.* at 25); Fed. R. Crim. P. 16(a)(1)(A), (B).

---

[6] References to "Tr." are to the transcript of the April 29, 2015 hearing on Defendants' Joint Motion to Compel. (Doc. 362.)

Finally, the government states that it does not at this time intend to use any items regarding RTPL or its reports in its case-in-chief at trial, rendering disclosure under Rule 16(a)(1)(E)(ii) inapplicable.  (Doc. 295 at 10; Doc. 346 at 14.)  Thus, the government concludes, it need not disclose any items regarding RTPL, because these items would all be inculpatory and therefore not "material to preparing the defense" under Rule 16(a)(1)(E)(i).  (Doc. 295 at 11.)

There appears to be disagreement among the Circuits regarding whether Rule 16(a)(1)(E)(i) can ever require the government to disclose inculpatory evidence that it does not intend to use in its case-in-chief at trial.  The District of Columbia and Ninth Circuits hold that such evidence can be material to preparing the defense and therefore subject to disclosure,[7] while the Second Circuit holds that it cannot.  *Compare, e.g.*, *United States v. Marshall*, 132 F.3d 63, 67 (D.C. Cir. 1998) *and United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013) *with United States v. Stevens*, 985 F.2d 1175, 1180 (2nd Cir. 1993).  The Tenth Circuit does not appear to have addressed this issue.  This Court will examine existing authority on both sides of the question before making its recommendation.

In *Marshall*, the D.C. Circuit addressed this issue at some length.  It began by noting that "[t]he Supreme Court recently clarified the meaning of the phrase 'material to the preparation of a defendant's defense.'  The phrase authorizes defendants to examine government documents material to the preparation of their defense against the Government's case-in-chief."  *Marshall*, 132 F.3d at 67 n.1 (quoting *Armstrong*, 517 U.S. at 463).  Nevertheless,

> [t]he plain language of Rule 16(a)(1)[(E)(i)] . . . does not compel the conclusion that inculpatory evidence is immune from disclosure.  Inculpatory evidence, after all, is just as likely to assist in the preparation of the defendant's defense as exculpatory evidence.  In other words, it is just as important to the preparation of a defense to know its potential pitfalls as it is to know its strengths.

---

[7] In addition, as discussed below, the Seventh and Eleventh Circuits have cited the D.C. Circuit's ruling on this point with approval.

*Id.* at 67; *Slough*, 22 F. Supp. 3d at 3 ("It matters not whether [Rule 16(a)(1)(E)(i)] evidence is inculpatory or exculpatory."); *United States v. Safavian*, 233 F.R.D. 12, 15 (D.D.C. 2005) (Rule 16(a)(1)(E)(i) "is not limited to evidence that is favorable or helpful to the defense and does not immunize inculpatory evidence from disclosure.").

The court was careful to harmonize its decision in *Marshall* with its earlier rulings. Thus, for example, the *Marshall* court cited its previous ruling in *United States v. Graham*, 83 F.3d 1466 (D.C. Cir. 1996), that to be material to preparing the defense, evidence must "enable[] the defendant significantly to alter the quantum of proof in his favor." *Marshall*, 132 F.3d at 68 (quoting *Graham*, 83 F.3d at 1474). According to the *Marshall* court,

> this language does not mean that inculpatory evidence may never be material. To the contrary, a defendant in possession of such evidence may alter the quantum of proof in his favor in several ways: by preparing a strategy to confront the damaging evidence at trial; by conducting an investigation to attempt to discredit that evidence; or by not presenting a defense which is undercut by such evidence.

*Id.* The *Marshall* court also discussed another of its decisions on which many courts (including this one) have relied, specifically, *Lloyd,* 992 F.2d at 348, which held that "evidence is material under Rule 16 as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Marshall*, 132 F.3d at 68 (quoting *Lloyd*, 992 F.2d at 351); *see United States v. Mirabal*, Cr. No. 13-1152 WJ, slip op. at 3 (D.N.M. filed Apr. 29, 2014) (applying *Lloyd* standard); *United States v. Reese*, Cr. No. 11-2294 RB, slip op. at 4 (D.N.M. filed June 7, 2012) (same). Acknowledging that the *Lloyd* court "used the phrase 'materially exculpatory,'" the *Marshall* court explained that it "did so by way of illustration, not limitation," and added that it saw "no reason why inculpatory evidence could not serve the functions mentioned in *Lloyd* as well as exculpatory evidence." *Marshall*, 132 F.3d at 68.

Moreover, according to the *Marshall* court, inculpatory evidence can be "material to preparing the defense" not only because it can inform the defense's investigation, strategies, theories, and trial practice, but also because of its effect on plea negotiations.

> [T]he discovery obligations mandated by Rule 16 contribute to the fair and efficient administration of criminal justice by providing the defendant with enough information to make an informed decision as to a plea. . . . If the government is excused from its obligation to disclose incriminating evidence (and does not intend to introduce such evidence during its case-in-chief), the defense must make any pre-trial plea decisions without knowing the true strength of the government's evidence.

*Id.* at 68; *see also* Fed. R. Crim. P. 16, Advisory Committee Notes, 1974 amend. ("Pretrial disclosure ought . . . to contribute . . . to an informed guilty plea practice.").

The *Marshall* court also addressed a potential stumbling block to requiring the government to disclose inculpatory information it does not intend to use in its case-in-chief, specifically, that such evidence may become relevant only in response to evidence the defendant offers at trial, and that the government may not be able to predict whether this will occur. To resolve this difficulty, the *Marshall* court crafted the following limitation on the requirement to disclose material, inculpatory evidence under Rule 16(a)(1)(E)(i):

> [t]o give rise to a disclosure obligation, the evidence's materiality must, of course, be evident to a reasonable prosecutor. The prosecutor need not guess that evidence may become material as a consequence of a defendant's not-yet-revealed strategic decisions. Nor must the prosecutor assume that the defense will make false assertions about the facts, hence making relevant contrary evidence that would not have been relevant had the defense adhered to the truth.

132 F.3d at 69 n. 2.

The Seventh and Eleventh Circuits have cited *Marshall* with approval. *Baker*, 453 F.3d at 424 ("Rule 16 requires the production of inculpatory as well as exculpatory evidence, which might assist in preparation of a defense."); *United States v. Jordan*, 316 F.3d 1215, 1250 (11th Cir. 2003) ("'helpful' means relevant to preparation of the defense and not necessarily

exculpatory"); *see also United States v. Cruz-Velasco*, 224 F.3d 654, 665 (7th Cir. 2000) (government should have disclosed potentially inculpatory passenger list to defense, and district court did not abuse its discretion in prohibiting the government from using list to rebut defendant's testimony at trial).

Opinions from the Ninth Circuit, in turn, have arrived at the same result as *Marshall* without relying on it.  Thus, for example, in *Muniz-Jaquez*, the Ninth Circuit did not cite to *Marshall*, but tracked its reasoning in more than one respect, when it stated that

> Rule 16 is . . . broader than *Brady*.  Information that is not exculpatory or impeaching may still be relevant to developing a possible defense. . . .  Even inculpatory evidence may be relevant.  A defendant who knows that the government has evidence that renders his planned defense useless can alter his trial strategy.[8]  Or he can seek a plea agreement instead of going to trial.  As the Supreme Court recently noted, 'criminal justice today is for the most part a system of pleas, not a system of trials.'

718 F.3d at 1183 (quoting *Lafler v. Cooper*, 132 S. Ct. 1376, 1388 (2012)).  Likewise, in *United States v. Hernandez-Meza*, the court held that "[i]nformation is material even if it simply causes a defendant to completely abandon a planned defense and take an entirely different path."  720 F.3d 760, 768 (9th Cir. 2013) (quoting *United States v. Doe*, 705 F.3d 1134, 1151 (9th Cir. 2013)).

Notwithstanding the weight of the foregoing authority, the Second Circuit has limited "item[s] . . . material to preparing the defense" under Rule 16(a)(1)(E)(i) to those that could be used in defendant's case-in-chief, *i.e.*, exculpatory items.  *Stevens*, 985 F.2d at 1180.  The *Stevens* court rejected the idea that inculpatory rebuttal evidence could ever be material under Rule 16:

---

[8] The Ninth Circuit's reasoning in *Muniz-Jaquez* is reminiscent of the Tenth Circuit's reasoning in cases considering whether the belated disclosure of exculpatory *Brady* material is prejudicial to a defendant.  *See, e.g., Case v. Hatch*, 731 F.3d 1015, 1041 (10th Cir. 2013) (in determining whether late disclosure of *Brady* material is prejudicial, court "will consider how *Brady* material might meaningfully alter a defendant's choices before and during trial . . . including whether the defendant should testify"); *United States v. Burke*, 571 F.3d 1048, 1054 (10th Cir. 2009) (late disclosure of *Brady* material may be prejudicial where it meaningfully alters a defendant's choices regarding "how to apportion time and resources to various theories when investigating the case, whether the defendant should testify, whether to focus the jury's attention on this or that defense, and so on.").

> [e]vidence that the government does not intend to use in its case in chief is material if it could be used to counter the government's case or to bolster a defense; information not meeting either of those criteria is not to be deemed material within the meaning of the Rule merely because the government may be able to use it to rebut a defense position. Nor is it to be deemed material merely because it would have dissuaded the defendant from proffering easily impeached testimony.

*Id.*; *see also United States v. Delia*, 944 F.2d 1010, 1018 (2nd Cir. 1991) ("We know of no legal principle that requires the prosecution to disclose its proposed rebuttal evidence to the defendant, to help him decide whether to pursue a particular contention."). The Second Circuit does not appear to have engaged in any extensive analysis in arriving at this conclusion. *Stevens*, 985 F.2d at 1180; *Delia*, 944 F.2d at 1018.

In addition to the appellate decisions discussed above, the Court must consider certain language in *Armstrong* that has been relied on in this District and could at first glance be read to limit Rule 16(a)(1)(E)(i) to exculpatory material. *See, e.g.*, *United States v. Arambula*, 2014 WL 7717615 at *2 (D.N.M. 2014) ("'preparing the defense' in this context deals exclusively with rebuttal of the government's case-in-chief") (citing *Armstrong*, 517 U.S. at 462). The language in question states that

> in the context of Rule 16 the defendant's defense means the defendant's response to the Government's case in chief. While it might be argued that as a general matter, the concept of a 'defense' includes any claim that is a 'sword,' challenging the prosecution's conduct of the case, the term may encompass only the narrower class of 'shield' claims, which refute the Government's arguments that the defendant committed the crime charged. Rule 16(a)(1)[(E)] tends to support the 'shield-only' reading.

*Armstrong*, 517 U.S. at 462. The Court makes two observations regarding this language. First, it addresses only the term "the defendant's defense," and not what evidence might be "helpful to preparing" that defense. *See generally id.* Second, three Justices joining in the *Armstrong* decision were careful to note that it was limited to the specific question at issue in that case,

specifically, whether the term "the defendant's defense" may include a defendant's claim of selective prosecution. *Id.* at 471-72. For these reasons, this Court reads *Armstrong* to leave open the possibility that inculpatory evidence may be material to preparing the defense under Rule 16(a)(1)(E)(i).[9]

Having considered all of the foregoing, the Court concludes that *Marshall* and its kin are the better reasoned cases and represent the greater weight of authority. The Court therefore proposes to find that inculpatory items can be material to preparing the defense and subject to disclosure under Rule 16(a)(1)(E)(i), and to reject the government's argument that items regarding RTPL need not be disclosed because they are potentially inculpatory. The Court further proposes to find that the items Defendants have requested regarding RTPL are material to preparing Defendants' defense. Evidence either that Defendants relied on the RTPL reports in good faith, or that they obtained the reports fraudulently, would strongly indicate whether Defendants knew that they were distributing controlled substance analogues; and such knowledge, according to some courts, is an element of the crimes with which Defendants are charged. *See, e.g.*, *United States v. Turcotte*, 405 F.3d 515, 531-32 (7th Cir. 2005); *United States v. McMillin*, 2015 WL 778866 at *6-*8 (W.D. Mo. 2015); *but see United States v. McFadden*, 753 F.3d 432, 439-41 (4th Cir. 2014), *cert. granted*, 135 S. Ct. 1039 (2015) (rejecting scienter requirement for Analogue Act offenses). In these circumstances, the record strongly indicates that items in the government's possession, custody, or control discrediting RTPL, its reports, or Defendants' alleged reliance on them would enable Defendants to significantly alter the quantum of proof in their favor, by helping them to direct their investigation of the case, plan their rebuttal of the government's case-in-chief, and engage in plea negotiations. *Marshall*, 132 F.3d at 67-68.

---

[9] The fact that the D.C. Circuit in *Marshall* cited to *Armstrong* supports this conclusion. 132 F.3d at 67 n.1.

Moreover, if only by way of briefing and arguing the present motion, the government is by now obviously aware that Defendants may use the RTPL reports at issue to show that they did not know the charged substances were controlled substance analogues.  Further, the government has clearly already considered countering this defense with evidence that RTPL is a "sham lab" and that Defendants obtained the RTPL reports fraudulently.  (Doc. 280-2 at 5.)  In short, all of the parties are thoroughly cognizant of the RTPL reports and how they are likely to be used at trial.  Thus, the government "need not guess" that this evidence "may become material as a consequence of a defendant's not-yet-revealed strategic decisions" or "assume that the defense will make false assertions about the facts, hence making relevant contrary evidence that would not have been relevant had the defense adhered to the truth." *Marshall*, 132 F.3d at 69 n. 2.  In short, the government cannot plausibly deny that the likely materiality of the requested items is "evident." *Id.*

For all of the above reasons, the Court concludes that items regarding RTPL and the reports Defendants allegedly obtained from RTPL are subject to disclosure pursuant to Rule 16(a)(1)(E)(i).  The Court notes, however, that there is very little indication in the record regarding the actual contents of this evidence.  Indeed, there is even some indication that the evidence may not exist.  (Tr. at 20 (Mr. Burkhead's statements were "a theory of the case that may or may not be – turn out to be true").  It is possible that such evidence may be privileged.  Thus, although the Court recommends that the government be ordered to produce the items Defendants have requested regarding RTPL, the Court also recommends allowing the government to submit for *in camera* review any responsive documents which they claim are protected by a privilege not previously raised.  *See, e.g., Lloyd*, 992 F.2d 352 (ordering district court to conduct *in camera* review of contested discovery on remand).

2.    **Data Underlying Pharmacological Studies on which Government Expert Intends to Rely**

The Court will next consider Defendants' request that the government produce "[a]ll of the underlying data" for two unpublished, DEA-contracted pharmacological studies regarding the substances Defendants are charged with distributing and conspiring to distribute.  (Tr. at 31-33.)  Dr. Li Fang, an expert witness for the government, intends to rely on these studies but did not conduct them.  (*Id.*)  Defendants first identified a dispute regarding this data at the hearing on April 29, 2015.  (*Id.*)  Previously, Defendants had been seeking the reports that the two studies generated; and, the government duly disclosed these reports on or about February 17, 2015.  (*Id.*; *see* Doc. 346 at 12.)  At the April 29, 2015 hearing, defense counsel were unable to articulate why they need the data underlying these studies, beyond noting that the studies were not peer-reviewed and that "the experts . . . tell us that the raw data is important."  (Tr. at 33-35.)  Further, Defendants have not identified any legal authority supporting their request for this data (*see generally id.* at 32-35), although they sought the studies' reports pursuant to Rule 16(a)(1)(G).  (Doc. 346 at 12.)  Nevertheless, the Court has identified and will consider three possible legal bases for requiring the government to produce this information.

First, the Court will consider whether Defendants are entitled to the data they seek pursuant to Rule 16(a)(1)(F), which requires disclosure of the "results or reports" of "any scientific test or experiment" that is material to preparing the defense or that the government intends to use in its case-in-chief.  Fed. R. Crim. P. 16(a)(1)(F).  The Tenth Circuit addressed the scope of this disclosure requirement in *United States v. Price*, 75 F.3d 1440 (10th Cir. 1996).  In *Price*, the court denied a defendant's request for "the underlying bases of the government chemist's conclusion that the substances he tested were methamphetamine," as well as "information relating to the reliability of the chemist's equipment," and "evidence of the

chemist's credentials." *Id.* at 1444.  The *Price* court based its ruling on Rule 16(a)(1)(F)'s plain language, which it called "clear on its face.  It requires the prosecution to turn over results or reports of scientific tests." *Id.* at 1445.  According to *Price*, Rule 16(a)(1)(F) required nothing more. *Id.*

The Ninth Circuit reached a similar conclusion in *United States v. Iglesias*, stating that, "[w]hile we certainly respect defendants' rights to inspect and copy the actual results or reports of scientific tests, we are not willing to force the government to disclose every single piece of paper that is generated internally in conjunction with such tests."   881 F.2d 1519, 1524 (9th Cir. 1989).  According to the *Iglesias* court, requiring disclosure beyond results and reports "would violate both the plain meaning and the spirit of Rule 16(a)(1)[(F)], and also would place unreasonable burdens on the government in future cases." *Id.*   In the present matter, the government has produced the "results and reports" not only of any studies Dr. Fang conducted, but also of the unpublished pharmacological studies on which he intends to rely.  (Doc. 346 at 12-13; Tr. at 32.)  In these circumstances, the Court concludes that the government has complied with "the plain meaning" and "spirit" of Rule 16(a)(1)(F)'s disclosure requirements, and that this subsection does not entitle Defendants to the data they seek.  *Price*, 75 F.3d at 1444; *Iglesias*, 881 F.2d at 1524.

The Court further determines that Defendants are not entitled to the data they seek pursuant to Rule 16(a)(1)(G), which requires disclosure of "a written summary" of any expert testimony that the government intends to offer during its case-in-chief.  Fed. R. Crim. P. 16(a)(1)(G).  Defendants have not cited, and the Court is unaware of, any authority holding that data underlying a scientific study on which an expert relies, but which the expert did not conduct, must be included in a "written summary" of the expert's proposed testimony.  In *United States v.*

*Ashlock*, the court noted that the disclosure requirements of Rule 16(a)(1)(F) and (G) include "results or reports of any scientific test" and "a summary of each expert's testimony, which must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." 105 F. App'x 581, 586 (5th Cir. 2004), *sentence vacated on other grounds*, 543 U.S. 1136 (2005). However, "Rule 16 does not instruct the government to provide detailed step-by-step information" regarding the tests that the expert performed. *Id.* The Court concludes that the data Defendants have requested, like the "detailed step-by-step information" at issue in *Ashlock*, exceeds the scope of the "summary" Rule 16(a)(1)(G) requires.

Finally, the Court determines that the data Defendants seek is not discoverable pursuant to Rule 16(a)(1)(E)(i) as items material to preparing the defense. Fed. R. Crim. P. 16(a)(1)(E)(i). As noted above, "[a] defendant must make a prima facie showing of materiality before he is entitled to obtain requested discovery" under Rule 16(a)(1)(E)(i). *Lujan*, 530 F. Supp. 2d at 1234. Here, Defendants have failed to make that showing. At the hearing on April 29, 2015, defense counsel actually admitted as much, stating, "[d]on't ask me to explain why it's important because I don't know, but the experts tell us that the raw data is important." (Tr. at 33.) In short, Defendants have presented neither the arguments of counsel nor the testimony of "the experts" explaining the data's alleged importance.

The Court is aware of decisions holding that data directly underlying a scientific study that a government expert has conducted is subject to disclosure pursuant to Rule 16(a)(1)(E)(i). *See, e.g.*, *United States v. W.R. Grace*, 233 F.R.D. 586, 590 (D. Mont. 2005); *Siegfried*, 2000 WL 988164 at *1; *United States v. Liquid Sugars, Inc.*, 158 F.R.D. 466, 471-72 (E.D. Cal. 1994). However, Defendants have cited, and the Court has located, no case holding that Rule 16(a)(1)(E)(i) requires the disclosure of data that is a full step further removed, *i.e.*, data

underlying a study someone other than the expert conducted, on which study the expert merely intends to rely. The Court declines to impose such an expansive disclosure obligation on the government, particularly in the absence of any showing by Defendants that such data is material to preparing their defense. For all of the above reasons, the Court recommends denial of Defendants' motion to compel the government to produce the data underlying the two unpublished, DEA-contracted pharmacological studies on which Dr. Fang intends to rely.

3.     **DEA Protocols for Making Analogue Determinations**

The next category of items Defendants seek concerns evidence of "[t]he scientific protocols that [the DEA] used" to determine whether any given substance is an analogue, including methodology, process, and procedures.[10]  (Doc. 346 at 9; Tr. at 35, 48.)  Defendants have persisted in seeking this information despite the government's repeated representations that no such protocols exist, based on a DEA employee's reference to "the analogue committee protocol" in an electronic mail message.  (Doc. 346 at 9-12; *see* Doc. 280-6.)  At the Court's direction, the government determined that the "protocol" to which this employee referred broadly addresses the respective responsibilities of the DEA subdivisions that participate in analogue determinations.  (Doc. 346 at 7-8; Tr. at 43-44.)  By December 2014, the government had already produced a letter by DEA Associate Chief Counsel Jane Erisman outlining this "protocol."  (Doc. 346 at 7-8; Doc. 361-1.)  Beyond Ms. Erisman's letter, the government asserts that it has no items responsive to Defendants' request, because no written protocols exist regarding the methodology, process, and procedures the DEA follows whenever a substance is suspected to be an analogue.  (Tr. at 37-38, 44.)  Thus, even if items evidencing DEA protocols for making analogue determinations are discoverable – which issue the Court need not and does

---

[10] This dispute does not concern the methodology, process, and procedures that the DEA used to test the substances seized in this case; the parties agree that the government has disclosed that information.  (Tr. at 42-43, 53-54.)

17

not reach – the Court recommends denial of Defendants' motion to compel their disclosure because the government has already produced all such items in its possession, custody, or control. (*Id.* at 47, 53-54.)

**4.     Items Concerning Internal DEA Analogue Discussions**

Defendants next seek to compel the government to disclose items regarding all analogue determinations the DEA has made, including "internal DEA emails that discuss analogue determinations," and "any documents that reflect an opinion that a substance should not be treated as an analogue" or does not meet the criteria for an analogue.[11] (Doc. 280 at 15-16; Doc. 346 at 6.) Defendants indicate that they seek this information not only as to the substances they are charged with distributing and conspiring to distribute, but also as to all other substances the DEA has determined to be analogues or non-analogues. (Tr. at 57-59.) According to Defendants, they seek this information because internal DEA opinions that a substance should not be treated as an analogue are potentially exculpatory, and because the defense may be able to infer the DEA's methodology for analogue determinations from reviewing all of its internal discussions on the subject. (*Id.*)

The government asserts that it has disclosed all items evidencing internal DEA discussions in which anyone expressed a dissenting opinion about whether a substance charged in this case should be treated as a controlled substance analogue. (Doc. 346 at 7; Tr. at 56.) The government states that it does not know if it has produced all items evidencing DEA discussions in which only concurring opinions were expressed regarding the charged substances, but takes the position that such documents are not discoverable. (Tr. at 67-68.) Finally, the government

---

[11] Defendants also seek items indicating that Dr. Arthur Berrier, a DEA chemist, was disciplined for expressing the opinion that UR-144 did not meet the criteria for a controlled substance analogue. (Doc. 280 at 16-17.) The government has stated that Dr. Berrier was not subject to any discipline for expressing this opinion, and that no such items exist. (Tr. at 64-65.) The Court therefore concludes that this issue is moot.

18

avers that it would "have no way of knowing how to even comply with an order" to produce the requested items with respect to substances that are not charged in this case, given the age of the Analogue Act and the breadth of the request.  (*Id.* at 59.)

Initially, the Court will consider items evidencing internal DEA discussions in which anyone expressed any doubt or dissent regarding, or questioned or challenged the reasoning of, a determination that a charged substance meets the criteria of a controlled substance analogue. The Court finds that, provided the substance under discussion was one which Defendants are charged with conspiring to distribute or distributing, such items are potentially exculpatory, material to preparing the defense, and subject to disclosure under Rule 16(a)(1)(E)(i).  *United States v. Nashash*, 2014 WL 169743 at *1 (S.D.N.Y. 2014) (where defendants requested "reports, studies, and other information pertaining to the classification of [the charged substances] as controlled substance analogues[,] documents showing that these substances are not substantially similar to [a controlled substance] bear[] directly on the Defendants' guilt"). The Court therefore recommends that the government be ordered to make a pointed inquiry of the DEA and to ensure that it has disclosed each and every such item.

However, the Court reaches a different conclusion with respect to items evidencing internal DEA discussions (a) in which only concurring opinions were expressed about a charged substance, and (b) regarding non-charged substances, regardless of the opinions expressed.  The Court concludes that Defendants have failed to make a prima facie showing that items in either of these categories are material to preparing the defense and therefore subject to disclosure; neither category appears at all likely to enable Defendants to alter the quantum of proof in their favor at trial.  *Marshall,* 132 F.3d at 68; *Lloyd*, 992 F.2d at 351.  Items in the former category are wholly redundant of inculpatory evidence already disclosed; and, items in the latter category are

wholly unrelated to the crimes with which Defendants are charged, and would also be unduly burdensome for the government to produce. The Court therefore recommends denial of Defendants' motion insofar as it seeks to compel the disclosure of these two categories of items.

**5.      Lists of Substances the DEA has Determined to be Analogues or Non-Analogues**

Finally, Defendants seek lists of substances the DEA has determined to be analogues or non-analogues. (Doc. 346 at 3.) The government has inquired and determined that the DEA does not maintain lists of substances determined to be analogues or non-analogues (*id.* at 3-6), notwithstanding an electronic mail message by Lance Kvetko, a DEA employee, referencing a website "list[ing]" UR-144 and stating that "Dave is keeping a running list." (*Id.* at 4 (quoting Doc. 280-6).) At the Court's direction, the government determined that this message alluded to a "share point site" of internal DEA memoranda about substances under consideration as analogues. (*Id.* at 5-6; Tr. at 66.) According to the government, this site no longer exists.[12] (Tr. at 66.)

To the extent that Defendants are seeking internal memoranda from the "share point site" that no longer exists, these memoranda constitute "items concerning DEA analogue discussions," which the Court addressed in Section 4, *supra*. If the government still has access to memoranda previously posted on the share point site, it should include them in any production the Court's Section 4 analysis requires. To the extent that Defendants continue to seek actual lists of analogues and non-analogues because they find it "incredible" that the government does not maintain such lists (Tr. at 65), the courts disagree with Defendants' position.

---

[12] The Court proposes to find that this is an adequate explanation of Mr. Kvetko's reference, and recommends denial of Defendants' request in their Joint Status Report Concerning Discovery for additional information regarding the share point site's history and existence as a fishing expedition unsupported by any legal authority. (Doc. 346 at 6); *see United States v. Mayes*, 917 F.2d 457, 461 (10th Cir. 1990) ("The Constitution does not grant criminal defendants the right to embark on a broad or blind fishing expedition among documents possessed by the Government.").

> [A] list of particular chemical compounds could not encapsulate the variety of substances potentially covered by the [Analogue] Act. Moreover, such a requirement would undermine the very purpose of the Act, which is to prevent individuals from creating slightly modified versions of controlled substances that produce similar effects and entail similar dangers as those controlled substances. Given the creativity of individuals manufacturing these analogue substances, there is genuine potential that the creation of such substances could outpace any efforts by authorities to identify and catalog them.

*McFadden*, 753 F.3d at 441; *see also, e.g. United States v. Fisher*, 289 F.3d 1329, 1336 n. 11 (11th Cir. 2002) ("No list of controlled substance analogues is necessary."); *United States v. Hofstatter*, 8 F.3d 316, 322 (6th Cir. 1993) ("Given the creativity of amateur chemists . . . a list [of chemicals that are controlled substance analogues] might well be impossible to compile."); *United States v. Klecker*, 228 F. Supp. 2d 720, 726 (E.D. Va. 2002), *aff'd*, 348 F.3d 69 (4th Cir. 2003) ("The very purpose of the statute . . . prevents a specific listing of chemical analogues."). As such, and based on the government's representations that it does not maintain lists of substances determined to be analogues and non-analogues, the Court recommends denial of Defendants' motion to compel the disclosure of such lists.

### *Conclusion*

For all of the above reasons, the Court recommends that Defendants' Joint Motion to Compel Discovery (Doc. 280) be GRANTED IN PART and DENIED IN PART as follows:

1.    The Court recommends that the motion be GRANTED with respect to the items Defendants have requested regarding RTPL and the reports Defendants allegedly obtained from RTPL. The government should be compelled to produce all items in its possession, custody, or control that are responsive to this request. Alternatively, if the government claims that a privilege not previously raised protects any responsive documents, they should be permitted to submit any allegedly privileged documents for *in camera* review;

2.      The Court recommends that the motion be DENIED with respect to the data underlying two unpublished, DEA-contracted pharmacological studies on which Dr. Li Fang intends to rely but which he did not conduct;

3.      The Court recommends that the motion be DENIED with respect to items evidencing DEA protocols for making analogue determinations based on the government's representations that it has produced all such items in its possession, custody, or control;

4.      The Court recommends that the motion be GRANTED IN PART and DENIED IN PART with respect to items evidencing internal DEA analogue discussions.  The Court recommends granting the motion in that the government should be required to make a pointed inquiry of the DEA to ensure that it has located and disclosed all items in its possession, custody, or control evidencing internal DEA discussions in which anyone expressed any doubt or dissent regarding a determination that a charged substance meets the criteria of a controlled substance analogue, or in which anyone questioned or challenged the reasoning of such a determination.  Further, if this inquiry reveals any such items not previously disclosed, the government should be compelled to produce them.  The Court recommends denial of the motion with respect to items evidencing internal DEA discussions in which only concurring opinions about the charged substances are expressed, and internal DEA discussions which concern substances not charged in this case; and,

5.      The Court recommends that the motion be DENIED with respect to DEA lists of analogues and non-analogues based on the government's representations that the DEA does not maintain such lists.  However, any internal memoranda previously posted on the DEA share point site that are still in the government's possession, custody, or control should be produced to the extent indicated in paragraph four, above.

The parties are notified that within fourteen (14) days of service of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(a)(1)(B) and Federal Rule of Criminal Procedure 59(b).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants the assigned district judge to review the proposed findings and recommended disposition.  If no objections are filed, no review will be allowed.

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE