IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                             Crim. No.  13-0571 MCA

IRA STOCKTON, *et al.*,

        Defendants.

## **ORDER**

This case comes before the Court for a determination by the Court in its role as gatekeeper of the admissibility of expert testimony by proposed Government witness DEA Special Agent Evan Miyamoto.[1]  This order addresses the Joint Motion referenced at [Doc. 374].

        The Federal Rules of Evidence provide that:

        A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
  (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
  (b) the testimony is based on sufficient facts or data;
  (c) the testimony is the product of reliable principles and methods; and

---

[1] SA Miyamoto was substituted for DEA Supervisory SA Scott Albrecht, who has been reassigned to Belgium at least through August 2018.

1

>   (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. Evid. Rule 702 (2011).  Rule 702 imposes a special gatekeeping obligation on this Court to insure that expert testimony is not admitted at trial unless it is both relevant and reliable.  *See Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137, 141 (1999); *Daubert v. Merrell-Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993).  The relevance of such testimony also must be weighed against the danger of unfair prejudice, confusion of the issues, or misleading the jury as well as considerations of undue delay, waste of time, or needless presentation of cumulative evidence.  Fed. Evid. Rule 403.  In addition to determining whether the expert is qualified to offer an opinion, the Court's gatekeeping function requires the Court to determine whether (1) the expert's testimony will be helpful to the jury; (2) the expert's testimony is based upon sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the witness has applied the principles and methods reliably to the facts of the case.  Reliability under *Daubert* is determined by looking at whether the reasoning or methodology underlying the testimony is scientifically valid, and relevance is determined by whether that reasoning or methodology properly can be applied to the facts in issue.  *Smith v. Sears Roebuck and Co.*, 232 Fed. App'x 780, 781 (10th Cir. 2007).

   According to the United States' Notice of Expert Witness [Doc. 409], SA Miyamoto is offered to testify about the "designer/synthetic drug industry in general." His proffered testimony includes:

>   the manufacturing process, the origins of the illicit chemicals, production ratios, the varying levels within the distribution continuum (manufacturer,

> wholesaler, retail, and street), pricing comparisons between street, retail and wholesale distributors, common distribution points, ingestion methods and the common effects of synthetic cannabinoids, and user quantities versus distribution quantities.  [He] will also testify to common marketing practices utilized in the trafficking of synthetic drugs and how such practices are set-forth not only for the successful sale of said drugs but also to bolster a perception of legality relating to the drugs in themselves.

At the *Daubert* hearing, the United States explained that SA Miyamoto was being offered "to make a clean break between the fact witnesses, the case agents, and [the expert,] Agent Miyamoto."  [Tr. (October 14, 2015) at 406]

The Court finds that SA Miyamoto's knowledge of the synthetic drug industry derives primarily from his experience conducting investigations as a DEA agent.  The Court finds that SA is qualified by experience to testify the about aspects of the synthetic drug industry, provided, however, that his testimony is based on personal knowledge acquired as a DEA agent.

The Court finds that SA Miyamoto's testimony will be helpful to the jury, as (1) agent Miyamoto's possesses personal knowledge of the synthetic cannabinoid industry beyond that of lay jurors and (2) that knowledge will help the jury understand the facts of this case.  Fed. Evid. Rule 702(a).  Caveat: while SA Miyamoto may possess knowledge of "the designer/synthetic drug industry *in general*," the Court intends to strictly limit his testimony before the jury to those aspects of the synthetic cannabinoid industry directly at issue in this case.  Fed. Evid. Rules 401(b), 403.

The Court finds that if limited to matters within the personal knowledge he has acquired through his experience as a DEA agent, SA Miyamoto's testimony will be based on sufficient facts or data.  Fed. Evid. Rule 702(b).

The Court finds that SA Miyamoto's personal observation of aspects of the synthetic cannabinoid industry in the course of DEA investigations is a reliable method of obtaining information about the synthetic cannabinoid industry.  Fed. Evid. Rule 702(c).

Lastly, the Court finds that SA Miyamoto's testimony will reflect the reliable application of his specialized knowledge to the facts of this case, Fed. Evid. Rule 702(d), provided counsel for the Government limits direct examination to questions designed to elicit responses that are (1) based on SA Miyamoto's personal experience conducting synthetic cannabinoid investigations as a DEA agent and (2) address aspects of the synthetic cannabinoid industry that directly relate to the issues in this case.  If at trial counsel for the Government has any doubt whether a question is appropriate given these limitations, counsel should request guidance from the Court before proceeding.

**So ordered this 3rd day of May, 2016.**

_____
M. CHRISTINA ARMIJO
Chief United States District Judge